IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROCKY CUTLIP, SR., etc.,

                Plaintiff,            Case No. 3:08 CV 2751

    -vs-

                                        MEMORANDUM OPINION

CITY OF TOLEDO,

                Defendant.

KATZ, J.

This matter is before the Court on the Defendant City of Toledo's motion for summery judgment (Doc. 17), Plaintiff Rocky Cutlip, Sr.'s opposition (Doc. 30), Defendant's reply (Doc. 37) and Plaintiff's surreply (Doc. 40). The Court notes federal question jurisdiction under 28 U.S.C. §1331 and proper venue under 28 U.S.C. §1391.

**I. Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.*

at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately,

this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## II. Background

In accord with the summary judgment standard, the facts are laid out in the light most favorable to the Plaintiff.

Rocky Cutlip, Jr. ("Decedent"), Plaintiff's son, killed himself in the early morning of May 29, 2007. After overdosing on Adderall, Decedent called 911 complaining of police parked in front of his home pursuant to "federal warrants." Two officers responded to his home around 2:30 a.m. Upon seeing the officers, Decedent retreated to his room, which decedent's fiancee had reported contained a shotgun. After the officers followed Decedent into his bedroom, he pointed the shotgun to his head.

The police established a perimeter and brought in two negotiators, Officers Gillen and Korsog. Officer Gillen conducted the negotiations with Decedent while Officer Korsog took notes and maintained communication with the perimeter. Officer Gillen convinced Decedent to lower the gun from his head for a time. Though he considered speaking with his father (Plaintiff), Decedent would not disarm and come out in order to do so.

Shortly after declining to end the siege in this manner, Decedent returned the shotgun to his head and began to weep. Plaintiff raises some dispute about the timing, but after negotiations broke down, Defendant's Direct Patrol unit (the equivalent of SWAT) triggered a startling distraction device and attempted to storm Decedent's bedroom. He shot himself as the first officer entered the doorway.

Plaintiff sued Defendant[1] under 42 U.S.C. §1983, the Fourteenth Amendment, and Ohio law.

**III. Discussion**

Plaintiff makes no claims against any of the officers identified in reference to his son's death; he has sued only the City of Toledo.[2] In order to establish a claim against the City of Toledo, Plaintiff must identify a municipal policy leading to a constitutional violation; *respondeat superior* is not enough. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In order to establish liability for his son's death, Plaintiff argues unconstitutional policy of failing to provide a psychological consultant for a negotiation, failure to train, and failure to supervise. Though Plaintiff establishes that Defendant had a policy of not providing a psychological consultant at negotiations in violation of its own written policy, Plaintiff can point to no right this violates; thus the argument fails.

Liability for either failure to train or failure to supervise depends upon an underlying constitutional violation. *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). In other words, the failure to train or supervise is not itself a violation of a constitutional right; these theories merely allow a plaintiff to hold a municipality liable for a policy leading to a constitutional violation in certain circumstances.

---

[1] Plaintiff also sued the City of Toledo Police Department. However, that entity is not separate from the City of Toledo and not separately subject to suit. *See Edmonds v. Dillion*, 485 F.Supp. 722, 724 (N.D. Ohio 1980).

[2] Plaintiff's complaint mentions five John Doe officers, but they have never been identified or served.

Plaintiff asserts substantive due process violations under the custody and state created danger theories left open in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 199-201 (1989). Though the court in *DeShaney* specifically noted no general duty of the state to protect its citizens from harm, it did note that liability could lie if a person was in custody or if affirmative acts of the state place a person in greater danger of private acts of violence. *DeShaney*, 489 U.S. at 196; *Stemler v. City of Florence*, 126 F.3d 856, 870 (6th. Cir. 1997) (custody); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998) (state created danger).

The state actors must demonstrate "deliberate indifference" for Plaintiff to establish a claim under either a substantive due process custody case or a state created danger case. *Stemler*, 126 F.3d at 870; *Kallstrom*, 136 F.3d at 1066. In this context, "deliberate indifference has been equated with subjective recklessness." *Ewolski v. City of Brunswick*, 287 F.3d 492, 513 (6th. Cir. 2002); *see also Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003) (same language in custody setting). In a similar hostage situation, the Sixth Circuit held "imprudence and poor execution do not rise to the level of constitutionally arbitrary abuses of power" and sound "in negligence, not deliberate indifference." *Ewolski*, 287 F.3d at 516. In *Ewolski*, the police tried several times to intervene in a situation where a man had barricaded himself, along with his wife and child, in his home, despite the risk of provoking him to violence; he eventually killed himself and his son. The panel acknowledged that even though the police knew of the risks, they also "knew that further delay and inaction also posed substantial risks." *Id.* at 513. This was true even though the man did not kill himself and his son until over an hour after the last failed attempt. *Id.* at 499.

5

Here, the City of Toledo Police Department negotiators felt that negotiations were breaking down and called for an intervention. Plaintiff asserts a delay of as much as forty-seven minutes (which has been disputed) demonstrates the lack of danger Decedent presented to himself and the lack of urgency in the situation. The first claim is belied by the Decedent's actions and, under *Ewolski*, the second is insufficient to show deliberate indifference.

The lack of deliberate indifference by any of the officers involved also follows from the unavoidable liability doctrine. The roots of this doctrine, where Defendant would have faced suit under the alternative action posed by Plaintiff, can be traced back as far as *DeShaney*. *Bukowski*, 326 F.3d at 711-12. In *DeShaney* a child was beaten by his father until he suffered irreparable brain damage after the state returned custody. The Supreme Court remarked that if the state had kept the child from his father, the father may have been able to sue over the right to custody. *DeShaney*, 489 U.S. at 203. *Bukowski* presented a similar situation, where a mentally handicapped young woman traveled hundreds of miles to meet a man she had communicated with over the internet. After her parents sent a message to the Akron police department, they collected her from this man's house. Because she wanted to go back, they returned her to him. He raped her both before and after she had been with the police. In finding no liability for the City of Akron, the Sixth Circuit noted that "[b]y failing to detain Bukowski, they face this lawsuit. If they had chosen to detain her, they may have faced another lawsuit based on charges of false imprisonment." *Bukowski*, 326 F.3d at 712.

Here, at several points, the officers of the City of Toledo could have acted differently, but at each they could have generated a different lawsuit, especially if Decedent had still killed himself. For example, if the police had delayed negotiation for a more experienced negotiator and

6

Decedent committed suicide during that delay, Plaintiff would likely have brought suit alleging that such failure violated his son's constitutional rights in the exact same way as he alleges the failure that actually occurred violated them. Further, Plaintiff does not contradict Officer Korsog's claim that around the time negotiations broke down, Decedent thanked the negotiators for prolonging his life.

**IV. Conclusion**

For the reasons discussed herein, Defendant's motion for summary judgment (Doc. 17) is hereby granted with respect to all of Plaintiff's federal claims. Pursuant to 28 U.S.C. §1367 and *Bishop v. Children's Center for Developmental Enrichment*, __F.3d__, 2010 WL 3324716 (6th Cir. 2010), the Court declines jurisdiction over Plaintiff's state law claims, which are hereby dismissed without prejudice. Case closed.

IT IS SO ORDERED.

                s/ *David A. Katz*
                DAVID A. KATZ
                U. S. DISTRICT JUDGE